IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARLENE THROWER, *individually, and as Administratrix of the Estate of* CSILISA E. WHITEHEAD,<br><br>        Plaintiff,<br><br>     v.<br><br>COMMONWEALTH OF PENNSYLVANIA; JILL MORROW, M.D., *individually*; CHERYL MCCALL, *individually*; ALAN BELLOMO, *individually*; FRED LOKUTA, *individually*; SUSAN LIGHTBOURN, M.D., *individually*; and EBENSBURG CENTER,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 3:10-CV-222<br>) JUDGE KIM R. GIBSON<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.    SYNOPSIS**

This matter comes before the Court on Defendants' "Motion to Dismiss Counts I, II, V, and VI of Plaintiff's Third Amended Complaint" (Doc. No. 35) pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes. For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

**II.   JURISDICTION AND VENUE**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper under 28 U.S.C. § 1391(b).

**III.  BACKGROUND**[1]

This case stems from the death of Csilisa E. Whitehead ("Decedent"), a former resident

---

[1] In light of the procedural posture of this case, the Court accepts as true the factual allegations of Plaintiff's Third Amended Complaint. See *infra*, Part IV.

1

of the state-run Ebensburg Center ("the Center"), which is a licensed intermediate care facility for individuals with intellectual disabilities. On December 29, 2007, Decedent experienced a behavioral crisis, in response to which medical personnel at the Center administered two injections of Haldol (Haloperidol), a prescription antipsychotic medication. As a result of these injections, Decedent became unresponsive. She was pronounced dead after resuscitation attempts proved unsuccessful.

Decedent's mother, Marlene Thrower ("Plaintiff"), commenced the instant action in the Court of Common Pleas of Cambria County to recover wrongful death and survival damages from the Commonwealth of Pennsylvania ("the Commonwealth"), the Center, and employees of the Center (collectively, "Defendants"). Defendants removed the case to this Court on August 23, 2010 (Doc. No. 1), and Plaintiff filed her Amended Complaint (Doc. No. 2) two days later. Defendants filed a motion to dismiss (Doc. No. 4), which was mooted by the filing of Plaintiff's Second Amended Complaint ("SAC") (Doc. No. 14). Defendants subsequently moved to dismiss the SAC on November 2, 2010 (Doc. No. 15), and the Court granted this motion (Doc. No. 32). In the interest of justice, however, the Court granted Plaintiff leave to amend within thirty days, which she did by filing her Third Amended Complaint ("TAC") (Doc. No. 33).

Plaintiff's TAC contains six counts against the Commonwealth, the Center, and Defendants Morrow, McCall, Bellomo, Lokuta, and Lightbourn (the "Individual Defendants"). In Counts I and II, Plaintiff seeks to recover monetary damages from the Individual Defendants pursuant to 42 U.S.C. § 1983 for their alleged failure to comply with the Omnibus Budget Reconciliation Act of 1987, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v ("Medicaid Act"), and implementing regulations found at 42 C.F.R. § 483.400, *et seq.* Counts III

and IV seek damages from Defendant Lightbourn—Decedent's treating physician—under a theory of medical professional liability. Counts V and VI state the same cause of action against the Commonwealth and the Center.

Defendants filed the instant motion to dismiss (Doc. No. 35), requesting that the Court dismiss Counts I, II, V, and VI of the TAC for failure to state a claim. The motion has been fully briefed (Doc. Nos. 36, 41), and is now ripe for disposition.

## IV. STANDARD OF REVIEW

Defendants filed the instant motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 12(b)(6) must be balanced with the requirements of Rule 8, which governs general pleading matters and provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8.

While the recent decisions of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), represent a significant change in federal pleading standards, the United States Court of Appeals for the Third Circuit has provided clear guidance to the district courts. To wit:

> after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." 129 S. Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950. This

"plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In short, a district court reviewing a motion to dismiss for failure to state a claim must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "legal conclusions" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material. *Iqbal*, 129 S. Ct. at 1949.

## V. DISCUSSION

Defendants raise several arguments in support of their motion to dismiss. Specifically, they contend that Counts I and II should be dismissed because: (1) §§ 1396a(a)(31) and 1396d(d) of the Medicaid Act and its implementing regulations, 42 C.F.R. § 483.400, *et seq.*, do not create privately enforceable rights; (2) Plaintiff has failed to allege sufficient personal involvement by any of the Individual Defendants other than Dr. Lightbourn; and (3) the Individual Defendants are entitled to qualified immunity. Defendants also contend that Counts V and VI should be dismissed because the Commonwealth and the Center are entitled to sovereign immunity. The Court will address these arguments *seriatim*.

### A. Privately Enforceable Rights

In Counts I and II of her TAC, Plaintiff asserts wrongful death and survival claims against the Individual Defendants for the deprivation of civil rights enforceable via § 1983. In particular, Plaintiff predicates her § 1983 claims on alleged violations of §§ 1396a(a)(31) and

4

1396d(d) of the Medicaid Act and implementing regulations found at 42 C.F.R § 483.400, *et seq.* (Doc. No. 33 at 8-11). In their motion, Defendants contend that Counts I and II must be dismissed because these provisions do not create privately enforceable rights. (Doc. No. 36 at 6-9). The Court disagrees with Defendants' contention.

As the Third Circuit has summarized:

> 42 U.S.C. § 1983 is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws. However, a plaintiff must assert the violation of a federal right -- not merely a violation of a federal law -- to seek redress. If a plaintiff alleges a violation of a federal right as the basis of a § 1983 action, we must determine whether the applicable federal statute confers an individual right. That is to say, whether a particular federal statute creates a federal right of the kind enforceable by an action for damages under § 1983 requires that we determine whether or not Congress intended to confer individual rights upon a class of beneficiaries. A plaintiff bears the burden of establishing that a statute gives rise to federal rights enforceable through § 1983.

*Grammer v. John J. Kane Reg'l Ctrs. - Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (internal citations and quotation marks omitted).

To determine whether a statute gives rise to federal rights enforceable through § 1983, the Third Circuit has directed courts to follow the test announced by the Supreme Court in *Blessing v. Freestone*, 520 U.S. 329 (1997), as clarified by *Gonzaga Univ. v. Doe*, 536 U.S. 237 (2002):

> first, courts should determine whether Congress intended that the statutory provision in question benefits the plaintiff; second, courts should decide whether the right asserted is so "vague and amorphous" that its enforcement would strain judicial competence; and lastly, courts should determine whether the statute unambiguously imposes a binding obligation on the states.

*Grammer*, 570 F.3d at 525 (citing *Blessing*, 520 U.S. at 340-41). If these three elements are met, then courts must inquire into whether the statute in question unambiguously confers a

substantive right by using rights-creating terms. See *id.* at 527; *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 521 (E.D. Pa. 2011). "Rights-creating terms are those that 'clearly impart an individual entitlement and have an unmistakable focus on the benefitted class.'" *Medevac*, 817 F. Supp. at 521 (quoting *Sabree v. Richman*, 367 F.3d 180, 187 (3d Cir. 2004)).

Applying this methodology, courts have concluded that various portions of the Medicaid Act create individually enforceable rights. In *Sabree*, for example, the Third Circuit concluded "without difficulty" that §§ 1396a(a)(10), 1396d(a)(15), and 1396a(a)(8) satisfied the *Blessing* test because "the plain language of the statute clearly conveys that a state 'must provide' plaintiffs with 'medical assistance,' including [intermediate care facility for persons with mental retardation] services, with 'reasonable promptness.'" *Sabree*, 367 F.3d at 189. Continuing, the Third Circuit concluded that "[i]n requiring states which accept Medicaid funding to provide [intermediate care facility for persons with mental retardation] services with reasonable promptness, Congress conferred specific entitlements on individuals in terms that could not be clearer." *Id.* at 190. Courts have reached similar conclusions interpreting analogous provisions of the Medicaid Act. See e.g., *Dultz v. Velez*, 726 F. Supp. 2d 480, 489-90 (D.N.J. 2010) (holding that § 1396p(c)(1) creates individually enforceable rights because the statute designates individuals as beneficiaries using mandatory language, and Congress has not implicitly or explicitly foreclosed the § 1983 remedy through the Medicaid Act); *Sable v. Velez*, Civ. No. 09-2813, 2009 U.S. Dist. LEXIS 96360, *9 (D.N.J. Oct. 16, 2009) (concluding that §§ 1396a(a)(10)(C) and 1396a(r)(2)(A) are enforceable under § 1983 because "[t]he statutes create specifically and individually enforceable entitlements, they use rights-creating language, and

Congress has not preempted their enforcement") (*vacated on other grounds*, 388 F. App'x 235 (3d Cir. 2010)); *Conner v. Branstad*, 839 F. Supp. 1346, 1354-55 (S.D. Iowa 1993) (concluding that plaintiffs could seek enforcement of §1396d under § 1983 where they were the intended beneficiaries of the statute and its implementing regulations, the language was mandatory, the rights were not too vague, and §1983 enforcement was not foreclosed by the Medicaid Act); but see *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706(EBB), 1999 U.S. Dist. LEXIS 1479, *56-58 (D. Conn. Jan. 5, 1999) (holding that §§ 1396a(a)(33)(B) and (i)(1)(B) did not confer a private right to enforce state health agency certification regulations).

In the case *sub judice*, this Court must determine whether privately enforceable rights are created by §§ 1396a(a)(31) and 1396d(d) of the Medicaid Act and its implementing regulations, 42 C.F.R § 483.400, *et seq*. Section 1396(a)(31) provides that a participating state "must—with respect to services in an intermediate care facility for the mentally retarded[,] . . . provide . . . each patient . . . [with] a written plan of care . . . and . . . a regular program of independent professional review (including medical evaluation) which shall periodically review [the patient's] need for such services[.]" Section 1396d(d) defines the term "intermediate care facility for the mentally retarded" as an "institution (or distinct part thereof) for the mentally retarded or persons with related conditions" which, *inter alia*, "meets such standards as prescribed by the Secretary." The implementing regulations impose a litany of specific obligations on these facilities. See e.g., 42 C.F.R. § 483.420 ("The facility *must ensure the rights* of all clients. Therefore, the facility must . . . inform each client . . . of the client's rights and the rules of the facilities[.]") (emphasis added); § 483.430 ("Each client's active treatment program must be integrated, coordinated and monitored by a qualified intellectual disability professional[.]").

As the Third Circuit did in *Sabree*, this Court concludes "without difficulty" that the provisions at issue in this case create individually enforceable rights. First, the patients/clients are clearly the intended beneficiaries of these provisions which declare their rights and provide detailed descriptions of what facilities must do to ensure those rights. Second, the provisions are not vague or amorphous; to the contrary, they unequivocally define the rights of patients and the obligations of facilities. Third, these provisions unambiguously impose binding obligations on these state-run facilities, speaking clearly in terms of what the facilities "must" do. Finally, this Court finds that the above-cited provisions unmistakably confer substantive treatment rights on patients in rights-creating terms.

Plaintiff has satisfied her burden of establishing that the statutory provisions in question create federally enforceable rights through § 1983. Consequently, the Court will reject Defendant's contention that Plaintiff cannot state a § 1983 claim on these grounds.

### B.     Personal Involvement

Defendants next contend that Plaintiff has failed to establish the requisite personal involvement in wrongdoing by any of the Individual Defendants other than Dr. Lightbourn. (Doc. No. 36 at 9).[2] Plaintiff asserts that the TAC sufficiently pleads personal involvement of the Individual Defendants due to their positions as policymakers. (Doc. No. 41 at 8).

As this Court recently explained, individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused the

---

[2] This Court previously granted Defendants' motion to dismiss Plaintiff's SAC because it "allege[d] no facts to establish the requisite level of personal involvement in wrongful conduct by any of the individual Defendants." (Doc. No. 32 at 6). In the interest of justice, the Court granted Plaintiff leave to file her TAC to cure this deficiency. (*Id.*). Defendants now challenge the sufficiency of this amended pleading.

constitutional harm. *G.S. v. Sch. Dist. of Monessen*, No. 11-1643, 2012 U.S. Dist. LEXIS 53624, *9 (W.D. Pa. Apr. 17, 2012) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). In *G.S.*, this Court deemed sufficient a claim against individual policymaker defendants where the plaintiff alleged that: (1) the individual defendants were "responsible for the administration and implementation of district policies"; and (2) the district's "policies, practices, or customs . . . caused the alleged constitutional harm." *Id.* Thus, the Court denied the motion to dismiss in this respect.

The same result is warranted in the instant case. In her TAC, Plaintiff alleges that as directors and administrators of the Center, the Individual Defendants established its policies, practices, and customs. (See Doc. No. 33 at ¶¶ 33-38). Plaintiff further notes that in promulgating the policies and practices of the Center and failing to establish safer protocols, the Individual Defendants ignored well-known medical dangers and violated the standards established in the Medicaid Act. (See *id.* at ¶¶ 26-31; 43-48). Plaintiff further alleges that Decedent's death—the constitutional harm alleged in this case—was a direct result of these policies. (*Id.* at ¶¶ 26; 34; 36; 38; 50; 52). The Court finds that these factual allegations are sufficient to state a claim against the Individual Defendants as policymakers. Accordingly, the Court will deny Defendants' motion to dismiss in this respect.

### C. Qualified Immunity

Defendants also claim that Counts I and II must be dismissed as the Individual Defendants are state actors entitled to qualified immunity. In particular, they seek immunity on the grounds that at the time of their alleged misconduct, it was not clearly established federal law that the above-discussed portions of the Medicaid Act are enforceable under § 1983. (Doc. No.

36 at 10). Plaintiff contends that qualified immunity does not apply because Decedent's *rights* were clearly established at the time the Individual Defendants acted, even if it was uncertain at that time whether their actions would subject them to civil liability. (Doc. No. 41 at 9).

In *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856 (3d Cir. 2012), the Third Circuit explained qualified immunity as follows:

> [t]he doctrine of qualified immunity involves a two-part test. The defendants are entitled to qualified immunity unless the plaintiff demonstrates that both prongs have been satisfied. First, there must be a violation of a constitutional right. Second, *that right* must be clearly established . . . in light of the specific context of the case.

*Id.* at 858-59 (emphasis added, citations and quotation marks omitted). This test does not require courts to evaluate whether defendants knew liability would be imposed when they acted; rather, the inquiry focuses on whether the *right itself* was clearly established at the time defendants acted.

Instantly, Defendants' contention that it was not clearly established law that certain portions of the Medicaid Act create individually enforceable rights misses the qualified immunity mark. This Court is not concerned over whether the Individual Defendants, at the time they acted, knew they could be sued; instead the Court must focus on whether the *rights themselves* were clearly established at the time of the alleged misconduct. Here, Defendants do not suggest that the obligations imposed on facilities governed by the Medicaid Act were not in effect on December 18, 2009—the date Decedent died as the alleged result of the deficient care provided by the Individual Defendants. Thus, Decedent's rights as defined by the Medicaid Act were clearly established at the time her death. Additionally, Plaintiff has alleged sufficient facts to establish that the Individual Defendants violated these rights. Because Plaintiff has satisfied

both of these prongs, the Individual Defendants are not entitled to qualified immunity. The Court, therefore, will deny Defendants' motion in this respect as well.

### D. Sovereign Immunity

In Counts V and VI of her TAC, Plaintiff asserts wrongful death and survival claims against the Commonwealth and the Center under a theory of medical professional liability. Defendants contend that these counts should be dismissed as they are premised on corporate or enterprise liability, and Pennsylvania courts have held that "there is no exception to Pennsylvania Sovereign Immunity for the alleged corporate or enterprise liability of Commonwealth facilities in providing healthcare services." (Doc. No. 36 at 11). Plaintiff's opposition to Defendants' motion does not address this argument. (See Doc. No. 41).

Under the doctrine of sovereign immunity, the Commonwealth and its employees, "who are not high public officials . . . [when they act] within the scope of their employment and not in an intentionally malicious, wanton or reckless manner," are immune from suit in tort. *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Commw. Ct. 2009) (citation omitted). However, the Commonwealth has waived its grant of sovereign immunity with regard to several enumerated exceptions set forth in 42 PA. CONS. STAT § 8522. *Young v. Kahn*, No. 11-380, 2012 U.S. Dist. LEXIS 39985, *12 (W.D. Pa. Feb. 21, 2012). The pertinent waiver provision in the instant case is § 8522(b)(2), which provides that sovereign immunity is waived for claims of medical professional liability by acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse, or related health care personnel. *Young*, 2012 U.S. Dist. LEXIS 39985 at *12.

As the Pennsylvania Supreme Court has explained, "while [] § 8522(b)(2) waives

sovereign immunity for the negligent acts of specified individuals when they are working at or for a Commonwealth institution, it does not waive sovereign immunity for individuals who act as the corporate entity." *Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996). Accordingly, corporate liability claims against Commonwealth institutions premised on "the policies, actions or inactions of the institutions itself rather than the specific acts of individual hospital employees" are barred. See *id.*; see also *Dashner v. Hamburg Ctr. of the Dep't of Pub. Welfare*, 845 A.2d 935, 939 (Pa. Commw. Ct. 2004) (finding that allegations of "institutional, administrative negligence" of a Commonwealth facility "do not fall within the medical-professional liability exception to sovereign immunity"). To illustrate this principle, the Pennsylvania Supreme Court explained that a corporate liability claim against a hospital for harm caused to a patient by the hospital's "fail[ure] to keep an incompetent doctor from practicing within its walls" is barred by sovereign immunity. See *Moser*, 681 A.2d at 1326.

Here, Counts V and VI of the TAC allege that the Commonwealth and the Center failed to: (1) select and retain competent medical staff; (2) properly oversee and train individuals responsible for patient care; and (3) formulate, adopt, and enforce appropriate policies regarding the use of chemical restraints. (Doc. No. 33 at ¶¶ 64, 71). Under Pennsylvania law, however, such institutional/administrative negligence claims fall outside the narrow purview of § 8522(b)(2). Therefore, these claims are barred by sovereign immunity. Accordingly, the Court will dismiss Counts V and VI of the TAC. The Court will not grant Plaintiff leave to amend because justice does not so require—these claims are barred as a matter of law and not by any technical defect in the pleading.

## VI. CONCLUSION

For the above-stated reasons, Counts I and II of Plaintiff's TAC survive Rule 12(b)(6) scrutiny but Counts V and VI do not. Accordingly, the Court will dismiss Counts V and VI but deny Defendants' motion to dismiss in all other respects. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARLENE THROWER, *individually, and as Administratrix of the Estate of* CSILISA E. WHITEHEAD,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA; JILL MORROW, M.D., *individually*; CHERYL MCCALL, *individually*; ALAN BELLOMO, *individually*; FRED LOKUTA, *individually*; SUSAN LIGHTBOURN, M.D., *individually*; and EBENSBURG CENTER,<br><br>Defendants. | CIVIL ACTION NO. 3:10-CV-222<br>JUDGE KIM R. GIBSON |

## ORDER

**AND NOW**, this 31st day of May 2012, this matter coming before the Court on Defendants' "Motion to Dismiss Counts I, II, V, and VI of Plaintiff's Third Amended Complaint" (Doc. No. 35) and Plaintiff's opposition thereto (Doc. No. 41), and in accordance with the Memorandum, **IT IS HEREBY ORDERED** that the motion is **GRANTED in part** and **DENIED in part**. To wit, the motion is granted to the extent it seeks dismissal of Counts V and VI but is denied in all other respects.

BY THE COURT:

*/s/ Kim R. Gibson*

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**